IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

MICHAEL SHAWN EVANS,

    **Plaintiff,**

v.                                                           Civil Action No. 3:15cv64
                                                                  (GROH)

UNITED STATES OF AMERICA,

    **Defendant.**

## REPORT AND RECOMMENDATION

### I. Factual and Procedural History

On May 27, 2015, the Plaintiff filed a *pro se* complaint pursuant to the Federal Tort Claims Act ("FTCA"). On May 28, 2015, the Plaintiff was granted leave to proceed without prepayment of fees, and he subsequently paid the required initial partial filing fee. Although the Plaintiff filed his complaint on the court-approved FTCA form, in addition to naming the United States of America, the Plaintiff also named individual defendants. Accordingly, on June 1, 2015, the Court entered an Order directing the Clerk to strike the defendants other than the United States and informing the Plaintiff that if he wished to pursue relief against the individual defendants, he would be required to file a Bivens action.[1] On October 13, 2015, the Court conducted a preliminary review of this matter and determined that summary dismissal was not warranted. Therefore, an Order to Answer was entered, and the Clerk of Court was directed to issue a 60-days summons for the United States of America. On November 23, 2015, the United States filed a Motion to Dismiss with supporting memorandum and exhibits. On November 30, 2015, a Roseboro Notice was issued. On December 10,

---

[1] On August 3, 2015, the Plaintiff filed a Bivens complaint which has been assigned Civil Action No. 2:15cv60, and is pending before John Preston Bailey, United States District Judge, and is referred to United States Magistrate Judge James E. Seibert.

1

2015, the Plaintiff filed his response to the Roseboro Notice, and on December 17, 2015, he filed an affidavit with exhibits.

## II. The Pleadings

### A. The Complaint

In his complaint, the Plaintiff alleges that on May 2, 2013, he was assaulted by another inmate, who stabbed him with a Phillips head screwdriver. The Plaintiff alleges that this incident was caused by the negligence of staff who failed to secure and account for the screwdriver used in the assault. More specifically, the Plaintiff alleges that staff at FCI Gilmer failed to adhere to Program Statement 5500.14, which provides that "[e]ach institution is responsible for developing an Institutional Supplement outlining tool control procedures and inspections systems." ECF No. 23-2 at 29. In addition, the Plaintiff alleges that staff negligently allowed a cover-up of the incident by permitting a false incident report to be filed accusing him of being the aggressor. Finally, although not specifically mentioned in his claims, the Plaintiff notes in his statement of injuries that: [t]he stab wound on my face and other areas of my body cause my heart to race, cause me to feel angry and depressed every time I look in the mirror, I also wake from sleep at times, sweating, heart racing, angry and depressed with bad dreams about the incident." ECF No. 1 at 14. As well, in his administrative remedies, which are attached to the complaint, it would appear that he is dissatisfied with the psychological care he received following the incident. For relief, the plaintiff seeks compensatory damages in the amount of 1.5 million dollars, punitive damages in the amount of 1.5 million dollars and "declaratory damages." In addition, the Plaintiff requests that the Court overturn the decision of the Disciplinary Hearing Officer, restore his good time credit and remove the incident report from his file.

### B. Defendant's Motion to Dismiss

The Defendant seeks the dismissal of the Plaintiff's case for the following reasons:

1) The Plaintiff's claim must be dismissed because the actions of BOP officials clearly fall within the discretionary function exception to the FTCA;

2) The Plaintiff's attempt to overturn his disciplinary action is not appropriately brought in a FTCA action; and

3) To the extent that the Plaintiff alleges a claim of negligent medical/psychological care, it must be dismissed for failure to comply with the West Virginia Medical Professional Liability Act.

C. **Plaintiff's Traverse to the Defendant's Motion to Dismiss**

The Plaintiff's traverse is a reiteration of his complaint and an attempt to respond to the Defendant's reasons for dismissing the case. In addition, the Plaintiff has attached a copy of the DHO report. Four days after he filed his traverse, the Plaintiff filed an affidavit to which he has attached the documents related to his Administrative Tort Claim, as well as his administrative grievances and entries from the BOP Psychology Data System.

### III. Standard of Review

A. **Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the

3

claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

When, as here, a motion to dismiss is accompanied by affidavits, exhibits and other documents, the motion will be construed as a motion for summary judgment. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587.

## IV. Analysis

### A. THE FTCA

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

Pursuant to the FTCA, the United States is liable in the same manner and to the same extent as a private individual under like circumstances in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §§ 2674 & 1346(b)(1); Medina v. United States, 259 F.23d 220, 223 (4th Cir. 2001). In West Virginia, in every action for damages resulting from injuries to the plaintiff alleged to have been inflicted by the negligence of the defendant, the plaintiff must establish three elements: (1) a duty which the defendant owes to him; (2) a negligent breach of that duty; and (3) injuries received thereby, resulting proximately from the breach of that duty. Webb v. Brown & Williamson Tobacco Co., 2 S.E.2d 898, 899 (W.Va. 1939). The burden is on the plaintiff to prove these elements by a preponderance of the evidence. Id. at 899; see also Murray v. United States, 215 F.3d 460, 463 (4th Cir. 2000). Therefore, the plaintiff must prove that the "defendant's breach of duty was more likely than not the cause of the injury." Murray at 463 (quoting Hurley v. United States, 923 F.2d 1091, 1094 (4th Cir. 1991); see also Strahin v. Cleavenger, 603 S.E.2d 197 (W.Va. 2004) (stating that "no action for negligence will lie without a duty broken.").

The FTCA includes specific enumerated exceptions in 28 U.S.C. §2680. If an exception applies, the United States may not be sued, and litigation based upon an exempt claim is at an end. Smith v. United States, 507 U.S. 197 (1993); Dalehite, *supra*. Among the exceptions to the FTCA most frequently applied is the "discretionary function." The discretionary function exception precludes governmental liability for "[a]ny claim based upon ... the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). Congress believed that imposing liability on the government for its employees' discretionary acts "would seriously handicap efficient governmental operations." Id. at 814 (internal citations and quotations omitted).

The United States Supreme Court has announced a two-step test for determining whether the discretionary function exception bars suit against the United States in a given case. First, the Court must consider the nature of the conduct and determine whether it involves "an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991). Government conduct does not involve an element of judgment or choice and is not discretionary if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." Id. at 322 (internal citations and quotations omitted). If the conduct in question involves the exercise of judgment or choice, the second step of the analysis is to determine whether that judgment is grounded in considerations of public policy. "[T]he purpose of the exception is to prevent judicial second-guessing of legislative and

administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at 323.

With respect to federal prisoners, the Supreme Court has determined that the duty of care owed by the BOP is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule. United States v. Munitz, 280 F. Supp. 542, 546 (S.D.N.Y 1968). Title 18 U.S.C. §4042 defines the duty of care owed to a prisoner as "the exercise of ordinary diligence to keep prisoners safe and free from harm." Jones v. United States, 534 F.2d 53, 54 (5th Cir. 1976). However, the BOP's duty towards the protection of prisoners is not the guarantee of "a risk-free environment." See Usher v. United States, 2010 WL 3721385 (E.D. Ky. Sept. 15, 2010).

In West Virginia, negligence is "always determined by assessing whether the actor exercised 'reasonable care' under the facts and circumstance of the case, with reasonable care being that level of care a person of ordinary prudence would take in like circumstances." Strahin v. Cleavenger, 603 S.E.2d 197, 205 (W.Va. 2004). "A long standing premise of the law of [West Virginia] is that negligence is the violation of the duty of care under the given circumstances. It is not absolute, but is always relative to some circumstances of time, place manner, or person." Setser v. Browning, 590 S.E.2d 697, 701 (W.Va. 2003). Accordingly, the duty of care owed to an inmate under West Virginia law is consistent with 18 U.S.C. §4042.

Although 18 U.S.C. §4042 sets forth the mandatory duty of care, it does not direct how the duty is fulfilled. See Calderon v. United States, 123 F.3d 947, 950 (7th Cir. 1997)(finding the statute "sets forth no particular conduct that the BOP personnel should engage in or avoid while fulfilling their duty to protect inmates."). However, under the FTCA, in disputes between prisoners, it is clear that BOP employees could be negligent in their duty to protect prisoners if they "knew or reasonably

should have known of a potential problem" between inmates. Parrott v. United States, 536 F.3d 629, 637 (7th Cir. 2008).

   1. **Failure to Protect**

In the instant case, there appears to be no dispute that the Plaintiff and another inmate ("Payton") were involved in an altercation during the noon meal at FCI Gilmer on May 2, 2013. Nor, does it appear disputed that a weapon was involved, which was improvised from a Phillips head screw driver. In describing the event in his administrative tort claim ("SF-95"), the Plaintiff maintains that he was sitting in the inmate dining area in food service when Payton came from behind, attacked and stabbed him six times. The Plaintiff maintains that he got to his feet, and because there was nowhere for him to run, he defended himself and struck Payton, who fell to the ground and lost control of the screwdriver. The Plaintiff maintains that Payton reached to regain possession of the weapon, and accordingly, he grabbed Payton by the legs and pulled him away from the weapon and held him there until staff arrived. The Plaintiff indicates he was then taken to the medical department, where staff took pictures of the six stab wounds on his neck, face, under arm, and head. The Plaintiff maintains that he was given a tetanus shot and placed in the Special Housing Unit ("SHU") and given seven days' worth of pain tablets, five band-aides and one small packet of medicated jelly. ECF No. 23-2 at 2-3.

In his complaint, the Plaintiff makes no allegation that he had reason to fear an attack from Payton. Therefore, there is no allegation that any official at FCI Gilmer knew or reasonably should have known of a potential problem between the Plaintiff and Payton. Instead, the substance of the Plaintiff's claim is that because the weapon involved was made from a Phillips head screwdriver, Payton was in possession of the weapon as the result of staff failing to comply with Program Statement 5500.14, and thereby failing to account for a missing screwdriver. The Plaintiff elaborates

in his SF-95, by alleging that every day at FCI Gilmer, between 9:30 a.m. and 10:15 a.m., and again between 2:30 p.m. and 3:15 p.m., there is an announcement over the loud speaker for "Tool Return." The Plaintiff explains that it is mandatory that all tools are returned at that time, and staff working in the tool areas are responsible for accounting for each tool. If a tool is missing, staff must order all inmates to take off all their clothes and stand naked until staff does a thorough inspections of each inmate's clothing and each inmate's body before allowing any inmate to be dismissed from the work area. ECF No. 23-2 at 6-7.

Therefore, in essence, the Plaintiff is alleging that the discretionary function exception does not apply because there is a specific policy directing a course of action for an employee to follow, and the employee has no rightful option but to adhere to the policy. However, the Defendant has supplied an affidavit from Percy Lanham, Tool Room Officer, which establishes that the modified Phillips head screw driver used in the incident is not an FCI Gilmer tool ECF No. 23-5 at 1.

The salient point guiding this court's review is the fact that the Plaintiff bears the burden of proving that an unequivocal waiver of sovereign immunity exists and demonstrating that the discretionary function exception does not apply. LeRose v. United States, 285 F. App'x 93, 96 (4th Cir. 2008); Welch v. United States, 409 F. 3d 646 (4th Cir. 2005). Because the modified screwdriver was not a BOP tool, it was not subject to any tool control policy mandated by the BOP. Moreover, the Plaintiff cites no federal statute, agency regulation or policy that governs the control of "contraband shanks," and therefore, it is clear that the first prong of the discretionary function exception is met, and the question becomes whether the BOP's judgment in safeguarding the Plaintiff is grounded in public policy.

The Court must presume that actions or decision are "grounded in [public] policy" when a statute or regulation allows discretion on the part of governmental officials. Gaubert, 499 U.S. at

324. Here, aside from his allegation that BOP officials at FCI Gilmer violated a policy regarding tools controlled by the institution, he makes no claim that staff otherwise violated their duty to protect him. Moreover, Courts routinely find that the general duty of safekeeping by the BOP allows discretion and is grounded in public policy. Cohen v. U.S., 151 F.3d 1338, 1344 (11th Cir. 1998).

      Finally, when a federal prisoner sues under the FTCA for injuries caused by a fellow inmate, this court and others have uniformly held the action to be barred by the discretionary function exception. See, e.g., Usry v. United States, 2013 U.S. Dist. LEXIS 41420 (N.D. W.Va. 2013) aff'd. Usry v. United States, 2013 U.S. App. LEXIS 22528 (4th Cir. 2013); Donaldson v. United States, 281 Fed. App'x. 75, 76-78 (3rd Cir. 2008)(upholding dismissal of an FTCA claim that federal prison employees failed to protect plaintiff from assault by a fellow prisoner on a finding that the claim was barred by the discretionary function exception); Alfrey v. United States, 276 F.3d 557, 565 (9th Cir. 2002); Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998)(reversing judgment in favor of prisoner who brought an FTCA action for injuries sustained as the result of an attack by another inmate); Dykstra v. United States Bureau of Prisons, 140 F.3d 791 (8th Cir. 1998)(discretionary function exception applied, barring suit for BOP officials' failure to warn plaintiff that his youthful appearance might make him vulnerable to attack, or to place him in protective custody when plaintiff complained that fellow inmate was staring at him); Calderon v. United States, 123 F.3d 947 (7th Cir. 1997 (discretionary function exception applied to FTCA claim for government's failure to protect plaintiff from attack by cellmate); Buchanan v. United States, 915 F.2d 969 (5th Cir. 1990) (discretionary function exception applied to FTCA claim for damages by prisoners held hostage during a prison uprising); and Graham v. United States, 2002 U.S. Dist. LEXIS 1765 (E.D. Pa. Feb. 5, 2002).

Federal courts have consistently held that because § 4042(a) does not mandate a specific, non-discretionary course of conduct, a plaintiff must either demonstrate that other mandatory directives were violated, or that a BOP employee made a discretionary judgment not grounded in the policy of the regulatory regime, in order to establish subject matter jurisdiction. See, e.g., Calderon, 123 F.3d at 950 (holding that like §4042(a), the regulations within 28 C.F.R. §541 regarding inmate discipline and special housing units also provide general guidance to BOP employees). "Prison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors. These factors upon which prison officials base such decisions are inherently grounded in social, political, and economic policy." Dykstra v. United States Bureau of Prisons, 140 F.3d 791, 796 (8th Cir. 1998). Because §4042(a) "is an established governmental policy . . . [that] allows a Government agent to exercise discretion" in providing for the safekeeping, protection, and care of inmates, it must be "presumed that the [BOP's] acts are grounded in policy when exercising that discretion." Gaubert, *supra* at 324.

Here, because the Plaintiff has offered little or nothing to refute the United States' arguments or the evidence used to support them, he has failed to show that there was a mandatory directive that was violated as it relates to a contraband tool. In addition, because staff at FCI Gilmer had no reason to anticipate an attack by Payton on the Plaintiff, permitting them in the inmate dining area and reaction to the incident are the type of conduct the discretionary function exception was intended to protect. While the attack on the Plaintiff was unfortunate, he has produced no evidence to show that the BOP staff violated any prescribed mandatory duty as it relates to contraband tools. Thus, the undersigned finds that this court lacks subject matter jurisdiction to consider his claims.

## 2. Disciplinary Proceeding

As a result of the May 2, 2013, incident in the dining hall, the Plaintiff was charged with violation of Offense Code 201, Fighting with Another Person. Following a June 19, 2013 hearing, the DHO found that the Plaintiff had committed the act as charged and sanctioned him with the loss of 27 days Good Conduct Time. ECF NO. 23-2 at 16, 18. The Plaintiff appealed this decision, but the Administrator of National Inmate Appeals concluded that "the greater weight of the evidence supports the DHO's decision, and the sanctions imposed were commiserate to the severity level of the offense and in compliance with policy." ECF No. 27-8 at 6. Accordingly, in addition to monetary damages for failure to protect, the Plaintiff is requesting that the Court overturn the DHO decision, restore his good time credit and remove the incident report from his file.

The Defendant argues that the Plaintiff's attempt to overturn his disciplinary action is not appropriately brought in a FTCA action. The Defendant notes that because the Plaintiff is attempting to shorten the length of his confinement, by having his disciplinary proceeding overturned and Good Conduct Time restored, this portion of his claim must be brought in a habeas petition challenging due process. In addition, the Defendant argues that before an inmate may bring a claim alleging money damages as a result of sanctions received in a disciplinary action that involves the loss of good conduct time, he must show that there been a finding of guilt which has been reversed on appeal, expunged by executive order, declared invalid by a tribunal authorized to make such a determination, or called into question by a federal court issuing a writ of habeas corpus.[2]

The undersigned agrees that the Plaintiff's claim with respect to his disciplinary hearing is not proper. However, in concluding that his request for restoration of his good conduct time is not properly before this Court, the undersigned relies on more basic principles. First, the United States

---

[2] The Court cannot find any reference in the Plaintiff's pleadings which indicates that he is seeking monetary damages as the result of his disciplinary proceedings.

has not consented to be sued for constitutional torts. FDIC v. Myer, 510 U.S. 471, 477-78 (1994). The Plaintiff is alleging a violation of his constitution right to due process with respect to the disciplinary hearing. Therefore, he cannot bring the claim in this FTCA. In addition, the Plaintiff is seeking equitable relief in the form of expungement of the disciplinary record and reinstatement of his good conduct time. However, the only relief available under the FTCA is money damages. 28 U.S.C. § 1346(b)(1). Because the FTCA constitutes a limited waiver of sovereign immunity, courts do not have the power to exceed the limits established by Congress. Accordingly, because the Plaintiff seeks equitable relief, rather than monetary damages, he cannot pursue his claim regarding the disciplinary action in this FTCA, but must instead pursue reinstatement of his good conduct time in a habeas petition pursuant to 28 U.S.C. § 2241 in the district court having jurisdiction over his custodian.

### 3. Medical/Psychological Care

In his complaint, the Plaintiff does not include any claims regarding his medical or psychological care at FCI Gilmer following the May 2, 2013, incident. However, in the attachments, which include his administrative grievances, the Plaintiff indicates that wants to be seen by Psychology or triaged by a qualified medical professional capable of identifying his Post-Traumatic Stress Disorder issues. ECF No. 1 at 5. Therefore, in ordering an answer, the undersigned noted that the Plaintiff might be alleging that he did not receive appropriate psychological treatment following his injuries and suffers from post-traumatic stress disorder. However, to the extent that the Plaintiff is seeking damages for any alleged negligence by the BOP for failing to properly treat any post-traumatic stress disorder he may suffer, the claim is due to be dismissed.

To establish a medical negligence claim in West Virginia, the plaintiff must prove:

(a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.

When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (W.Va. 2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

### § 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this subsection.
1) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert

witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va. 2004).[5]

With regard to the appropriate standard of care, the Plaintiff has completely failed to sustain his burden of proof. The Plaintiff does not assert, much less establish, the standard of care for the treatment of post-traumatic stress disorder. Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to a breach of the duty of care. Moreover, to the extent the plaintiff's medical negligence claims arise in West Virginia, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6.

### V. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the Defendant's Motion to Dismiss [ECF No. 22] be **GRANTED**, and the Plaintiff's Complaint with respect to failure to protect be **DISMISSED with prejudice**, and his claims regarding the disciplinary hearing and treatment of his post-traumatic stress disorder be **DISMISSED WITHOUT PREJUDICE**.

Within **fourteen (14) days** after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the

---

[5] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985) Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied,* 467 U.S. 1208 (1984).

The Clerk of Court is directed to provide a copy of this Report and Recommendation to the *pro* se Plaintiff by certified mail, return receipt requested, to his las t known address as reflected on the docket sheet and to counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

Dated: April 11, 2016.

/s Robert W. Trumble
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE